22-3275 Team Industrial Services v. Zurich American Insurance Company May it please the Court, Nolan Knight here on behalf of Appellant Team Industrial Services, Inc. whom I will refer to as Team for purposes of my presentation this morning. Team respectfully requests that this Court reverse the lower court's summary judgment dismissal of Team's claims and causes of action. Before I transition into my substantive presentation, I do want to flag for the Court that in the lower court, the appellees moved for summary judgment on the alternative basis of collateral estoppel. The trial court did not rule on that ground. The appellees have raised collateral estoppel again in their response briefing on appeal. Team has replied to demonstrate why collateral estoppel does not apply. That's found in our reply brief, pages 22-29. It is my intent to stand on the briefing on collateral estoppel, barring any desire of the panel to discuss it, in which case, of course, I would be happy to spend as much time on that topic as the panel would like. Otherwise, in transitioning to my substantive presentation for this morning, there are essentially two broad categories that characterize the nature of the lower court's error in granting summary judgment, which I'm going to focus on. The first category relates to the construction of the document that's been referred to as change order number two. And in that regard, the lower court erred in her construction of the phrase consolidate two services contracts. So I'm going to take that issue up. The second issue that characterizes the lower court's error are that the lower court disregarded the considerable, expansive range of fact disputes which are material to this matter and which should not have been resolved by summary judgment. And in that regard, so I'm not putting too fine a point on the issue, for every factual assertion that the appellees made, team responded with a rebuttal factual assertion that supported inferences, if not the direct evidence, that substantiated the various elements of team's claim. So this is paradigmatically a situation in which summary judgment was not appropriate. A jury should have been allowed to consider these claims. Well, it seemed to me that most of these arguments related to how to construe the documents here. What's the factual issue? I think that's right, Your Honor. It is a threshold issue. So I will begin with the issue of consolidation and the meaning of change order number two. Change order number two, to be properly construed, it has to be understood that there are two narrative paragraphs in the change order. Each of the paragraphs, what I refer to as the first paragraph and the second paragraph, has standalone independent import, which is not contingent upon the focus of the subject matter of the second paragraph. And I'll walk the Court through this. And I note that at our brief opening brief at page 23, I quote this language, if the Court would like to review it with me. But the first paragraph of change order number two states in no uncertain terms, quote, this change order will consolidate the two services contracts that Fermanite 902236 and Team 902228 hold with Westar Energy and become effective as of September 1, 2017. That is a comprehensive, complete thought that requires no embellishment or supplementation to discern the party's intent. But it has to be read together with the next piece. I'm sure you're going to get there. I agree, Your Honor. And what's going to be important when we get to that second paragraph is the shift in focus of subject matter. By its plain language, the first paragraph, which I just quoted from, deals with the two services contracts in their entirety. No subset consideration. No secondary consideration. The actual services contracts in their entirety. And the introductory phrase for how we treat the two services contracts is the term consolidate. Now, it may come as a surprise to this panel that no one in this case has ever disputed which definition of consolidate controls in this matter. The lower court agreed, appellees agreed, and team agreed. The lower court, in fact, quotes the pertinent language in its memorandum opinion in order, appendix volume 44, page 53, and uses the following definition, which is the correct definition. That consolidate means to, quote, join together into one whole, unite, or to combine or unify separate items into one mass or one body. What does that mean in relationship to this plain language used in paragraph number one? Well, to consolidate, one of the predicate considerations is that there has to be two separate items. And what does paragraph one tell us? There were two services contracts. So for the work of the definition of consolidate to be complete, we now have to move to the step where those two separate items become unified, become one, become whole. And the only way for two previously discrete services contracts, the firm right contract and the team contract, to become whole, to become one, a unified body, is under the construction that has been proffered by team. By contrast, the construction that's been proffered by the appellees and the lower court is that, in effect, the legacy firm right contract goes away. Okay, well, that's not consolidation. That's not unification. That would be termination of one of the legacy agreements and the continual effect of the other. But that's not what consolidate means. Counsel, I know you're going to get to the second paragraph, but if we accept your interpretation of the change order language here, why wouldn't teams still have been required to enroll in the OCIP itself? So I'll very briefly take up the second paragraph, and then I'll answer that question directly, because I think the two issues are intertwined. With respect to the second paragraph, the focus shifts from discussion of the actual contracts to discussion of what to do with these stale, pending POs that were issued under the now obsolete Fermanite Document ID number. So we are talking about two very different things in those paragraphs. And if the rule is you have to harmonize and give effect to each provision, to each subsection, you can't treat the second paragraph in this discussion of the more narrow issue with respect to the purchase orders and the need to reissue the purchase orders under the surviving identification number for teams, you can't treat that as if it negates entirely the fact that the parties in the first paragraph use express, conspicuous, precise language to talk about what happened to the service contracts in their entirety. Now, to your question, Your Honor, with respect to how, even if you accept this consolidation concept, does that translate into whether or not a team had an obligation to enroll? Well, because if, in fact, the two agreements were consolidated, the pertinent contractual provisions that now, in order to teams' benefit, by virtue of the consolidation, provide as follows. And the language I'm about to quote from is from the first change order to the legacy Fermanite agreement, whereby the OSEP company for the first time was added. And what that contractual mandate dictates is that Westark is obligated to, quote, maintain at all times, during the performance of this contract, the insurance specified. An additional complementary contractual covenant that gets us to a very similar, if not the same place, is found in the OSEP requirements at section 1.10A, which were appended to the change order whereby the OSEP covenant was added to the legacy Fermanite contract. And that provision, similar to the previous provision, says that after, I'm paraphrasing, commencement for the work or services, Westark could not terminate the OSEP coverage without providing 30 days' notice and offering to cover the cost for replacement coverage. Did Fermanite change order 1 actually enroll Fermanite in insurance? No, Your Honor. In fact, Fermanite had enrolled in the OSEP approximately three months before its contract was amended to add the OSEP coverage. Which we think has a secondary significance that, you know, there's all this import about the contractual covenant language, which talks about Westark's right to implement the OSEP at its sole cost and expense, et cetera, et cetera, et cetera. However, the provision goes on, once implemented, you're obligated to maintain the coverage. And that was a point that I was making. And so the practical reality here is that this business about initial enrollment on this factual record is inapplicable and obsolete. Even Fermanite had already enrolled before this contractual covenant was implemented. So the portion of the contractual provisions that became relevant relate to continuation and renewal of coverage, not initial enrollment. And by virtue of the provisions I just read, Westark's obligation, when it was a Fermanite contract or when Fermanite was doing the work or services, was to ensure the continuation of the OSEP coverage. But going back to the issue of consolidation, once the contracts were consolidated such that all of the substantive provisions were merged together, that's the conventional notion of consolidation. We even go so far in our briefings at the director court to a corollary under transactional law when you're dealing with a consolidation or merger of entities. This is precisely the dynamic. You have two constituent entities. Only one of the two survives going forward. And you use the identifier for only one of the two going forward. That's precisely what the change order number two contemplates. That's precisely what happens. And because of that, Westark's contractual obligations to TEAM post-consolidation were to maintain the coverage as long as the contract was in effect, were to ensure that the coverage was continued after 30 days' notice and an invitation to replace it for the benefit of TEAM, because TEAM was doing the quote-unquote work or services. I guess I'm still struggling to see why the district court's reading of this second paragraph of the contract, read in conjunction with the first paragraph of the change order, I mean, isn't entirely reasonable and really unambiguous. The first sentence of the second paragraph answers the question of how these two contracts will be consolidated. How will they be consolidated? Well, the Fermanite contract, 902236, will be retired. And then it answers the question of, well, once you retire that contract and you're now under operating of a TEAM contract, what do you do with the pending purchase orders? And all pending purchase orders will be reissued under TEAM supplier ID to be governed by the terms and conditions of the TEAM contract. So to me, it's just about as straightforward as the district court made it, and it feels like you're complicating that when you say it means something other than what it says. The Fermanite, here's how we're going to consolidate them. This is what's going to work for us. This one's going to be retired, and the purchase orders that are pending will now be under the terms and conditions of the TEAM contract, which is now the only contract, really. I guess I don't understand why that isn't just a reasonable, obvious interpretation of Change Order 2, and it appears that that's the way the parties proceeded. Because that would denude the term consolidate of any independent meeting. Why couldn't consolidation be this contract's going to take precedence, and this one's essentially going to be retired? That's how we're going to work it out. You've got to consolidate them somehow. Consolidate doesn't necessarily have to mean we're going to take this provision from this contract and this from another. It doesn't use the word combination. That's right. I think the definitional meaning of the term consolidate has that effect, because, again, the definitional meaning deals with these separate constituent parts,  There is no combination or unification if you interpret that second paragraph, the term retire, not terminate. There was a termination covenant, which they could have used. But if you construe that term retire to mean that the historical Fermanite provisions were not going to carry forward, then there's no consolidation. You're just doing away with withdrawing one contractual agreement, and you're expanding the scope under a second contractual agreement, which I note would be illogical because the team agreement had a provision whereby the scope of services could have been expanded, without any reference to the Fermanite contract. So if you're going to be true to the actual definitional meaning of consolidate, as well as acknowledge the fact that there were contractual mechanisms that could have been accomplished with the appellees in the lower courts are contending, we respectfully think that the term consolidate should be construed in accordance with this plain meaning. And I see that I am out of time. Barg, any questions for the panel? I've got an additional question for you. When I issued questions before, it was because I understood you as saying there are factual issues here, and your argument has been essentially how to interpret language. Is there any evidence regarding what the parties intended this change order to cover? Is there anything to suggest that the parties were even thinking about insurance coverage when they made this change order? For example, anything you have that would illuminate what the parties meant? Any evidence of any conduct or statements that would illuminate that? I think there is, Your Honor. Of course, I would be cautious in noting that the parties took the position that the contract was unambiguous, and so I don't want us to imply that parole happens. This comes up every session. Each party says it's unambiguous, and we sometimes say you're both wrong. Right, exactly. So as far as evidence that would bear on the parties' intent, I think, for instance, the fact that Westar, who clearly knew Fermanite after September 1st, 2017, was no longer performing the work or services, because that is a plainly, that's the intent of change order number two. It actually authorized its broker, Aon, to file an application with Zurich to continue the coverage for the previously covered work. For the 2018 policy year, when again, Westar knew only team would be performing that work in the policy year. So if you're looking for behaviors that align with the construction of change order number two that I proffer, I think that's a pretty powerful indicator. Westar should not have been enrolling anybody for the 2018 policy year for that eval work that Fermanite had done. Should not have been enrolling anyone for that work if their position was that Fermanite's no longer going to do work at the facility. There's no need for Fermanite to receive insurance coverage, nor is there a need for anyone else substituting in to be covered. If that was Westar's position, there would have been no reason whatsoever to submit that 2018 coverage application, but it did so. And so we think that that is one example of evidence to that effect. Thank you. Thank you. Any other questions? Good morning. My name is John Bullock. I'll be arguing for Evergy Kansas Central, known as Westar in this appeal. I'll share half my time with counsel for the insurance carriers, Ms. Webster, at about the halfway point. I'd like to yield to her with the permission of the court. May it please the court. Unambiguous contract, stipulated facts. We've had a lot of discussion about what change order number two means. We've talked about a few of the facts. What we haven't talked about yet much this morning are the stipulated facts, which makes this a little different summary judgment case than many in that we don't have a contract and a bunch of discovery. We have a lot of stipulated facts. For example, TEAM stipulated in this case, in the pretrial order, that Westar had sole discretion to select which contractors would participate in the OSIP, and Westar never selected TEAM to participate. TEAM stipulated that the OSIP owner can exclude any contractor for any reason, and that Westar made a business decision not to include TEAM. The OSIP program materials expressly require enrollment as a precondition to coverage, and TEAM stipulated that it never enrolled in the OSIP. TEAM stipulated that it never merged with Fermanite, and at all times remained a separate company. That there is no document anywhere expressly saying TEAM had a right to enroll in the OSIP, and that even Fermanite had no right to be selected for OSIP participation. Counsel, it didn't merge, but it did assume Fermanite's work. Why isn't that significant? The OSIP, the master service agreements remain separate. The OSIP program does not pertain to the work. The OSIP program pertains to contractors who are selected to participate, who enroll, and who then do perform work. So merely performing the work is not enough. TEAM could not show up at the plant, do valve work, and then claim that they'd satisfied these express preconditions to participation or coverage. That's not how the contract works, and that's not how the policies work with respect to how the insurance carriers would view it. The contract between TEAM and Westar clearly allocated the duty to obtain liability insurance to TEAM. Nothing ever changed that. Westar had no duty to ensure that TEAM was selected for OSIP participation or that TEAM received OSIP coverage. A breach of contract claim requires the establishment of a contractual duty that was breached. No duty, no breach. Westar had a clear and unambiguous right in its sole discretion to select or exclude any contractor from the OSIP. Westar chose not to select and, in fact, to exclude TEAM from the OSIP. You can't breach a contract by doing something that the contract explicitly gives you a right to do. I'll say a few words about change order number two. Of course, we've been over this. The change order in the first paragraph states what the parties intended to do. The second paragraph explains how they intended to do it. And if, in particular, you focus on the language of that second paragraph, it states as follows. Fermanite contract 902236 will be retired and all pending POs under the previous Fermanite supplier ID will be reissued. It's not ambiguous at all. It's not merely about future pending purchase orders. It specifically, in harmony with the first paragraph, indicates how are we going to effectuate the consolidation by retiring, that is, putting out to pasture. It will do no further work. This contract will no longer be in service, the Fermanite contract. And the parties made clear that the TEAM contract would govern going forward, not once, not twice, but three times. They said TEAM Industrial Services, Inc., supplier ID number, and contract number. They could not have made it more clear. Again, unambiguous contract, stipulated facts. Thank you. One of the arguments made by opposing counsel was that your interpretation of the second paragraph makes the word consolidate superfluous in the first paragraph. And it's what is added by the word consolidate after you're essentially saying that the second paragraph does everything. What's the purpose of the first paragraph? What's the function of the word consolidate in the first paragraph under your interpretation? Reading this change order in its entirety in the context of the existing contractual agreements, the intent of the parties was to consolidate the services under one agreement. They could have put that under the Fermanite agreement. They could have put it under the TEAM agreement. They could have drafted an entirely new third contract. Some sort of mashup of the two, I suppose, would be a fourth option. But they did none of those things. What they said is the how we are going to consolidate is by taking the Fermanite contract, the TEAM contract, the Fermanite contract goes away, and the TEAM contract continues as the surviving contract. That's the way to read the entire change order in context, in harmony, without discounting the second paragraph or the word retired. I'll say just a few words about breach of fiduciary duty. There haven't been any comments about that. The fiduciary duty claim is barred by the existence of a written contract between these same parties on the same subject. The claim is barred because it seeks the same damages as TEAM's breach of contract claim. That's a legal defect that's not addressed in the briefing. And Westar never consciously assumed any duty to act as TEAM's fiduciary. This was an arm's-length relationship between two large, sophisticated companies. I would simply reiterate here that you can't have a fiduciary duty to do something that the contract explicitly allows you not to do. Or in other words, Westar had the option to choose or not choose, to exclude or not exclude TEAM from the contract. It cannot have had a fiduciary duty to include them. Briefly on promissory estoppel, the trial court can be affirmed on this issue as a matter of law because, again, there's a written agreement on the same subject matter. Kansas law does not allow a promissory estoppel claim under those circumstances. There's no evidence of any promise by Westar to select TEAM for OSIP participation. And even if Westar had a duty somehow to offer TEAM the opportunity to enroll in the OSIP, which is not in evidence, TEAM did not enroll and thus cannot establish an essential element of this claim. Finally, we did brief the issue of collateral estoppel. In deference to my co-counsel, I do want to make sure I yield the floor in adequate time for her to have an opportunity to speak. If there are any questions from the panel, I'd be glad to field those before I yield the floor to my co-counsel. What about the mistaken payments to... There were payments made to Zurich, premium payments to Zurich, when TEAM was performing, but they were in Fermanite's name. I may not have that exactly right, but it seemed a strange thing to be happening, which was inconsistent with the change order. How does that not create an ambiguity or a problem that would defeat summary judgment? Well, first, Your Honor, that doesn't change anything about what the contracts say, and it doesn't un-stipulate the facts that TEAM never enrolled, they were never selected to enroll, and so forth. I'm glad to have an opportunity to address this because the entire OSIP program moved from one insurance carrier to another. There were eight contractors who were part of the program at that time, including Fermanite. There was no conscious, thoughtful decision to enroll Fermanite for any particular year, and, in fact, the evidence shows that the individual at Westar who did that work didn't even know who Fermanite was. It was really just moving the entire program from one carrier to another. Fermanite went along for the ride, but no one ever intended that TEAM would be selected, and, in fact, the stipulated fact is that TEAM was never selected. But there were premium payments made that should not have been made. Is that right? The premium payments are with respect to the program as a whole. They're trued up at the end of the year based on the actual work that was done, so there was no specific discrete payment made with respect to Fermanite. It was more a question of the entire program, then they calculate payroll throughout the year, and then at the end they true it up. So, in reality— It was trued up, then, in this case? I believe that's correct, Your Honor. Ms. Webster will know better on the insurance side of things, if I may. So there wasn't any specific effort to enroll Fermanite in 2018? Post the change order? When the administrator of the OSIP ported the entire plan over to a new carrier, Fermanite's name was listed on a document entitled Application, and it was transferred over along with the other eight contractors. But there was never any intent, never any instruction, and there certainly was never any contractually valid selection, initial enrollment. I mean, think about it this way. It was a mistake? Is that what you're saying? It wasn't a mistake. It was just something that happened. Was there testimony about why this happened? Webster's testimony was that the person who moved the OSIP program didn't know who Team was, didn't know who Fermanite was. They just moved the entire program. Nobody deposed Aon, so we don't know why Aon took it upon themselves to submit an application on behalf of Fermanite. Thank you. May it please the Court, my name is Meredith Webster. I represent Zurich American Insurance Company, and I'm speaking on behalf of all three of the insurers, including Westchester and Endurance. I'd like to start by sort of combining two questions posed by Judges Rossman and Judge Hartz, and that relates to the issues of enrollment and why payroll and any discrepancies there are not determinative for the claims against the insurers. With respect to enrollment, it is stipulated that Team did not enroll. When Mr. Knight stood up here, he never explained any manner that Fermanite's enrollment somehow transferred to Team by virtue of the contract, except to say, well, change order number one. However, change order number one was stipulated by Team to specifically reject any notion that it enrolled Fermanite into the OSIP program and or that it made Fermanite an insured under any insurer's policy. Counsel, what is the best evidence you can point us to to support the proposition that the insurance attaches to the entity, not the work performed? It's in the definition within the policy itself, which Team never challenged, in fact, never argued in its briefing. The language of the policy requires, as a predicate, that a contractor must be enrolled. The process for that is articulated within the OSIP manual, which Team stipulated that it did not do. So absent proof of enrollment, which there's no factual dispute it didn't happen, there has to be some sort of exception that allows Team somehow by magic to become an enrolled contractor. The only way to do that by operation of law is in the event of a merger, which it is, again, stipulated did not happen here. The only acquisition transaction was between the parent companies of Team Industrial and Fermanite America. Team Industrial and Fermanite America remained companies in existence subsequent to that acquisition, and they were sister companies. Again, that's stipulated. To Judge Hart's question about payroll, what was done was that Team, without anyone's knowledge, reported payroll as Fermanite, which would have gone into the Aon portal. So if Zurich or any other insurer were looking at it, they would have seen Fermanite. It is true that if payroll had been accurately reported, auditing could have revealed that a premium might need to go back to Westar. Again, it's a risk for all of the contractors, not just one. So it would have depended on the risk and the accidents or anything else going on with the other contractors. But that is not dispositive to the definition of an insured in the policy, and that dictates the result with respect to the claims against the insurance company. Payroll is not a material factual dispute. It has nothing to do with the interpretation of the insurance policy. So barring any sort of explanation of how a contract that does not provide for enrolled status or make a contractor insured dictates a result for the insurance company and no other explanation under the law, TEAM cannot succeed in bringing any of the claims against the insurance company. With respect to the questions that have been asked about unification, it is entirely in line with the definition of consolidate, as Judge Moritz pointed out, to state that consolidate means to unify and allow one contract to proceed forward. But even under TEAM's interpretation, it changes nothing with respect to the insurance issues. Because again, these are stipulated facts. TEAM came up here and said that there are other material factual disputes that dictate a result in favor of it and a reversal of the district court. None of those factual disputes were actually articulated in oral argument, but I want to go ahead and address them because Judge Hart just raised the question of whether there are material disputes. There are not. In addition to the payroll, TEAM has relied on this irrelevant testimony of Brenda Lamont. It does not dictate the result because Brenda Lamont testified, one, they were her personal opinions, not binding on Zurich. Two, she testified that Westar's intent governs. The principle that underlays any OSIP is that the owner controls who enrolls and it is stipulated that there was a business decision not to enroll TEAM. So anything she says does not override that there was not an intent to enroll TEAM and TEAM did not in fact enroll. For all of these reasons, we ask that this court affirm the district court.